THOMAS BLACK, DEFENDANT IN ERROR, v. JAMES G. PIDGEON AND ROSS PIDGEON ET AL., PLAINTIFFS IN ERROR.

Argued March 4, 1904—Decided June 20, 1904.

1. Replevin cannot be maintained by the mortgagee of personal property against the mortgagor, after default or conditions broken, without demand for the possession first made.
2. The Chattel Mortgage act, in requiring that there shall be annexed thereto the affidavit of the holder of the mortgage or his agent or attorney, stating the true consideration of the mortgage, does not in addition require that the affiant, as a part of his affidavit, shall swear that he is the holder of the mortgage; it is sufficient if it appears by the introductory recital to the affidavit that he is the mortgagee, and if by reference to the mortgage no doubt can be raised as to the identity of mortgagee and affiant.
3. The affidavit must on its face, or read in connection with the mortgage to which it is annexed, show how the relation of creditor and debtor arose between the mortgagor and mortgagee.

---

On error to the Camden Circuit Court.

This case was tried at the September Term, 1903, of the Camden Circuit Court, before Hon. James H. Nixon, Circuit judge, and a jury, and a verdict rendered for the plaintiff below. The defendants not having given a bond, the plaintiff had obtained possession of the horses, hence the verdict was nominal—for six cents, damages and costs.

For the plaintiffs in error, *Wilson, Carr & Stackhouse.*

For the defendant in error, *Francis D. Weaver* and *Howard L. Miller.*

The opinion of the court was delivered by

VROOM, J. This was an action of replevin and brought by a chattel mortgagee for the recovery of one gray mare, five years old; one gray horse, six years old, and one sorrel horse, six years old, claimed to be of the value of $300; and in his declaration the plaintiff averred the taking to have been in a certain close of him, the said plaintiff, in the borough of Collingswood, in the county of Camden.

The pleas interposed by the defendants were: (1) *Non cepit;* (2) that the goods and chattels in the declaration mentioned were the property of one Harry H. Devoe, and not that of the said plaintiff; (3) a plea by the defendant Joseph Hinger, which set up that he took the chattels in the declaration mentioned on or near the public highway at or near West Collingswood, and not in the close of the plaintiff in the borough of Collingswood, in the county of Camden, and avowing that he levied upon and seized and took in execution the said goods and chattels under a writ of execution issued out of the District Court of the city of Camden, as the property of one Harry H. Devoe, on a judgment recovered in said court by James G. Pidgeon and Ross Pidgeon, partners, &c., against the said Devoe.

To the second plea filed by the defendants, the plaintiff replied (1) that the goods and chattels were the property of him, the said Black, and not of the said Devoe; and as to the avowry of the said Joseph Hinger (2) that the goods and chattels were the property of him, the said Thomas Black, and not of the said Devoe.

The evidence adduced on the part of the plaintiff showed that Harry H. Devoe was indebted to the plaintiff in the sum of $368.74, and that to secure the said indebtedness the said Devoe gave to the plaintiff a chattel mortgage covering the three horses in question, and that the said mortgage was duly recorded in the register's office of the county of Camden; that the plaintiff, after the levy was made under the execution issued in the suit of James G. Pidgeon & Son against Devoe, made a demand upon Pidgeon for the said

goods, and that the said demand was refused. It appeared that the demand was made after the sealing of the summons in the replevin suit, but before the sheriff was instructed to serve it. At the time the demand was made the horses were in the stables of Pidgeon & Son, having been put there by Hinger after he had taken possession of them under the execution and levy.

At the close of the plaintiff's case the defendants moved for a nonsuit, upon the following grounds—*first,* that there was no proof of the demand prior to the commencement of the action; *second,* that the proofs did not show the taking in the place alleged in the declaration; and *third,* that the affidavit annexed to the mortgage is defective in certain particulars specified.

The motion to nonsuit was overruled by the trial judge, and, as we think, properly. The general rule, undoubtedly, is that the mortgagees of personal property cannot maintain replevin against the mortgagor after default or conditions broken, without demand for the possession. *Woodside* v. *Adams,* 11 *Vroom* 417; *Shinn Replev.,* § 354; *Cobb. Replev.* 172.

Although the evidence showed that the writ of replevin had been issued and was in the hands of the sheriff, who went with the plaintiff to the stables of Pidgeon when the demand was made by the plaintiff for the horses, it was not placed in the hands of the sheriff for service until after the demand was made, and the evidence of Black was that he demanded the horses before the sheriff served the writ. It appeared, also, from the proofs of the defendants, that Miller, who was the attorney of the plaintiff, had demanded the horses of Hinger several times before the suit was begun. There was undoubtedly sufficient evidence to go to the jury on the question of the demand.

As to the second ground urged—that the proofs of the plaintiff did not show the taking of the goods in the place alleged in the declaration—it is sufficient to say that we think that this was subject-matter of amendment, and the merits

of the case having been duly tried, the declaration in this respect should be treated as amended.

The third ground urged for the motion for nonsuit was that the affidavit accompanying the chattel mortgage was defective in the following particulars: (1) That the mortgagee did not swear in his affidavit that he was the mortgagee named in the chattel mortgage; (2) that Black did not state in said affidavit by whom the promissory note therein referred to was given; (3) that Black did not state in said affidavit how the debt, which is the consideration for said mortgage, arose; (4) that he did not state who incurred the debt; (5) that he did not state who purchased the chattels referred to in said affidavit; (6) that he did not state who was the holder of the promissory note therein referred to; (7) that he did not disclose the date of the promissory note therein referred to; (8) that he did not state when the promissory note therein referred to was given; (9) that there was due upon said mortgage the sum of $368.74, when by the terms of said mortgage the said sum was not to grow due until the 20th day of August, 1903.

It will not be necessary for the determination of this case to consider, in detail, all of the objections above made to this affidavit.

The fourth section of the revised act of 1902 concerning mortgages on chattels (*Pamph. L., p.* 487), enacts as follows:

"Every mortgage or conveyance intended to operate as a mortgage of goods and chattels hereafter made, which shall not be accompanied by an immediate delivery and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, having annexed thereto an affidavit or affirmation made and subscribed by the holder of said mortgage, his agent or attorney, stating the consideration of said mortgage and as nearly as possible the amount due and to grow due thereon, be recorded as directed in the succeeding section of this act."

The affidavit in this case, which was annexed to the mortgage and made by the mortgagee, was in the following words:

"Thomas Black, the mortgagee in the foregoing mortgage named, being duly sworn, on his oath says that the true consideration of said mortgage is as follows, viz., for the better security of a certain promissory note given to the said Thomas Black for the sum of $368.74, in payment for one gray mare and one gray horse, and payable at the expiration of seven months from January 20th, 1903, at the First National Bank of Woodbury, New Jersey, and that there is due on said mortgage the sum of $368.74, besides lawful interest thereon from the 20th day of January, A. D. 1903."

This court, in the case of *Fletcher* v. *Bonnet*, 6 *Dick. Ch. Rep.* 615, laid down the following rule as to the construction of affidavits annexed to chattel mortgages: That if the affidavit expressly refers to matters stated in the mortgage, those matters must be regarded as part of the affidavit; or, in other words, that the affidavit and mortgage should be read together, in order to ascertain whether there has been a sufficient compliance with the terms of the statute.

Applying this rule to the present case, the affidavit of the mortgagee, when read in connection with the mortgage, will show, I think, that all the requisites essential to a substantial compliance with the requirements of the statute have been complied with.

The first objection raised to the affidavit was that the mortgagee did not swear in his affidavit that he was the mortgagee named in the chattel mortgage, such fact being contained only in the prefatory recital to the affidavit, and that this was insufficient, it being insisted that as a part of the affidavit itself the mortgagee must swear that he is the mortgagee named in the chattel mortgage. This is not required by the terms of the statute. What it does prescribe is the affidavit of the holder of the mortgage stating the consideration of the mortgage, and as nearly as possible the amount due and to grow due thereon. The fact that the affiant, as the mortgagee, was duly sworn, appears here by

the recital in the affidavit. The identity of the names in the mortgage, and in the affidavit which is annexed to the mortgage, raises a·clear presumption of identity of the persons. Reading the mortgage and the affidavit together, no question of the sufficiency of the affidavit can be maintained in this particular. The next objection urged against the affidavit is that it fails sufficiently to show how the debt arose and who the debtor was. An examination of the affidavit discloses that the consideration of the mortgage is for the better security of a certain promissory note given to the said Thomas Black for the sum of $368.74, in payment for one gray mare and one gray horse. Reading this in connection with the condition of the mortgage, we discover the indebtedness of the mortgagor, Harry H. Devoe, to the mortgagee, for the very same amount for which the promissory note mentioned in the affidavit is given, and the property mortgaged thereby includes the same horses mentioned specifically in the affidavit, there can be no doubt as to the reasonableness of the presumption that Devoe is the debtor, and substantially shows how the relation between creditor and debtor was created within the ruling in *Graham Button Co.* v. *Spielmann, 5 Dick. Ch. Rep.* 120. If the chattel mortgage had failed to afford the necessary aid to the deficiencies claimed in the affidavit, another result might have been reached and the case might have been brought within the ruling in *Dunham* v. *Cramer,* 18 *Id.* 151, cited by the plaintiffs in error, in which case the fact that the chattel mortgage recitals made less disclosure of the transactions between the mortgagor and the mortgagee than did the affidavit itself, was made the express ground of the decision.

I can see no difficulty in the affidavit as to the date when the money was to ·fall due. In my judgment, it must be held to have been due at the time of the making of the mortgage by Devoe, and to have been payable in future, as recited in the affidavit.

The judgment below should be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON, FORT, HENDRICKSON, PITNEY, SWAYZE, BOGERT, VREDEN-BURGH, VROOM, GRAY.    11.

*For reversal*—None.